Take about a 10-minute recess before considering the third and final argument today. First we'll hear from Mr. Marvin J. Wyatt. We'll hear from Bordelon Marine. And Judge Haynes, you asked the appellee in the preceding case, isn't this just really a gotcha question? And that's really what we have in this case. We filed on April 11, 2016, a motion to enforce an arbitration agreement between the parties because the appellee, Bibby, refused to accept our nominated arbitrator. Bibby basically said, gotcha. They said gotcha because they said we blew an obscure procedure buried in fine print, not in the contract, but in incorporated terms that you then had to go to a website to find. But they kept writing you and asking you, and you all just kept, I don't know, having some weird filter in your e-mail. Is that really a gotcha when your opponent asks you for like three months to do something, and then? It wasn't three months. It was about 50 days. Okay, two months. That's still longer than most opponents gave me to do anything. And our initial response when they filed the petition for removal, and immediately the New Orleans lawyers, Jones-Walker filed the petition for removal, at the same time we were getting e-mails from their New York lawyers demanding mediation, demanding arbitration. We responded to that demand with a request for mediation, which, and I believe I gave the clerk a copy of the arbitration clause for the court to consider. It's an entire page in the contract. It's clause 34. It's 966 words. Some of them, about 250 of them, have been stricken through, which I'll get to later because that's relevant. Twenty-six of them were added. One of them was the state of New York was stricken through and replaced with the great state of Texas for where the arbitration was to take place, and Texas law was selected to apply where maritime law did not. And the contract very clearly in black and white provides for the selection of the arbitral panel. One is to be appointed by each of the parties hereto and the third by the two so chosen. What Bibby contends, and contended after that 56th day, on April 4th when we nominated Ed Price, we were immediately told, oh, you blew this deadline, and now we're going to arbitrate in front of our three arbitrators. On April 11th, a week later, we filed a motion to enforce arbitration. We filed it under Section 4 of the Federal Arbitration Act that provides a remedy where a party to a written arbitration agreement refuses to arbitrate in accordance with the terms of the agreement. But isn't this really a Section 5 case? I appreciate you starting with the merits, and that's what you care about. I'm really concerned about jurisdiction, both the whole issue of this messy LLC thing, but also appellate jurisdiction. Well, I believe appellate jurisdiction lies in the FAA, because we asked for an order to compel a party who was refusing to arbitrate in accordance with Clause 34, in accordance with the law. Yeah, but the judge has compelled arbitration. The argument isn't over going to arbitration. It's who are the arbitrators going to be, and that's a Section 5. Well, the judge denied our motion to compel arbitration in accordance with the written terms of the agreement, and that falls squarely— That's your characterization of it. I mean, it seems to me you can always, if you try to win anything regarding arbitration, you can always claim, well, the judge didn't enforce the—because I said the arbitration agreement required X, and the judge didn't agree with me, therefore, it's a Section 4 case, and I don't see that here. The judge has said, go to mediation—I mean, go to arbitration, cases administratively closed, have a nice day. What you don't like is that the judge didn't enforce your view of how the arbitrator should be selected, and that's a Section 5 problem, and we wouldn't have appellate jurisdiction over that. Well, we filed under Section 4 asking for an order compelling arbitration pursuant to the written terms of the agreement, which Section 5— 4, 5, and 6. Which Section 5 does say shall. If there is a method for selection of the arbitral panel, it shall be followed. That is in — that's the mandatory in Section 5. You may win on the merits on that, but that doesn't win you jurisdiction. The question is whether we have jurisdiction at this point. I understand, Your Honor. Consider that. And Section 5 doesn't have the correlative issue of, if you deny it, then you get an interlocutory appeal. Section 16 provides us with jurisdiction because we filed a motion. That's how this all started. I mean, we had — we had an agreement to arbitrate, and the parties went on their merry way and began talking about mediation, perhaps before arbitration. And when we finally nominated, we said, okay, they're not going to mediate. We nominated Mr. Price on April 4th. We were told, well, you blew the deadline. That's when we filed the motion to reopen the case and to enforce the arbitration agreement as written. Under Section 16 of the Federal Arbitration Act, an appeal may be taken from an order denying a petition under Section 4 of this title to order arbitration to proceed. Now, I understand your concern, Judge, that this would potentially make all orders regarding arbitration appealable. But I don't think that's the case, because we've got a very unusual atypical situation here. We're agreeing, both parties agree, that arbitration should go forward. The disagreement is who's going to arbitrate the case. And that's a Section 5 issue. I mean, you think this is unusual. Everybody thinks their case is unusual. Everybody is going to make an argument to try to squash themselves under 4, even when the Court has ordered arbitration, which is what 4 is about. So it seems to me that as soon as you start going, well, I mean, they ordered arbitration, but they didn't order my kind of arbitration, and therefore we're going under 4. I mean, that just strikes me as very, all that's subject to is the imagination of the lawyer. And lawyers are very imaginative, which is good. I mean, they're representing their clients, not being disrespectful of that. But that doesn't strike me as the way we ought to determine our jurisdiction by lawyer imagination. We believe that when the district court entered the order denying our motion to reopen case to enforce the method of appointment of arbitrators. That doesn't sound like motion to compel arbitration, which had already been compelled. It was not styled as a motion to compel arbitration. It was a motion as a party aggrieved by the failure, neglect, or refusal of another to arbitrate under a written agreement to arbitrate. In other words, Bibby was refusing to arbitrate under the terms of Clause 34, which says, before a panel of three, one chosen by each of the parties hereto, the third by the two so chosen. By their refusal to arbitrate under this term of this agreement, we became a party aggrieved under Section 4. That's what gives us our jurisdiction under Section 16a. And why, why, you have to ask, would Bordelon agree to permit unilateral default selection in this case? Why? When you look at Clause 34, as I said, it's almost a thousand words. It's 966 words. The first section is excised, is deleted. Among the paragraphs in that first section is a process for unilateral default selection, very similar to the unilateral default selection that Bibby claims was surreptitiously reintroduced through the back door through incorporation of the Society of Maritime Arbitrators' rules, which are available on a website. And I have to ask you, why in the world would you let somebody in the back door who you've just kicked off of the front porch? We clearly disagreed and deleted unilateral default selection. You say, well, do it under the laws of the AAA or under the laws of the so-and-so, and half the time, probably don't even know what those laws say, but it avoids the argument. Let's just agree, okay, there's this entity that has rules. We'll just comply by their rules. Those rules are different from what was crossed out here, so I don't see them as inconsistent. Section 10 of the SMA is the linchpin for the district court's order for us to proceed to arbitrate before a panel selected by one party. That is the linchpin. That's only because you all didn't respond to, I guess, the e-mail that got lost. We didn't get the first e-mail. Okay. And we suggested that we mediate. And for 50 days, we went back and forth, and then we nominated an arbitrator on April 4th, and then we got the gotcha. And then a week later, we filed this motion to reopen the case that had been closed, stayed and closed, and to determine the proper method for selection of the arbitrators. We filed a motion to enforce this specific language in the arbitration clause. Okay. Let me ask you this. What if you had gotten the e-mail and you had just gone, well, we're not going to do that, we don't like this, we're just not going to appoint somebody? There was no reason for us. We had agreed to arbitrate. I'm not asking that. This is a what if. Assume arguendo, that you had gotten the e-mail and you'd either ignored it on purpose or you'd said go drink the lake in response, and you had not nominated somebody. Then what are they supposed to do? Under your view of the agreement, what are they supposed to do? Under my view of the agreement, the procedure is in section B. The very first line of the arbitration agreement says, shall be governed by and construed in accordance with Title IX of the United States Code. Well, Title IX is the FAA, and the FAA provides a procedure when there is a lapse in the appointment of an arbitrator. It provides for the district court to appoint a neutral, not the other party, to stack the deck and appoint the second one, and then those two in turn select the third. So you essentially have an arbitration panel. So are you writing out the sentence that says the proceedings shall be conducted in accordance with the rules of the Society of Mean Arbitrators? Are you saying that should be lined out of the agreement? No. Absolutely not, Your Honor. What I'm saying is this clause should be read like a series of instructions, one, two, and three. It's like you go to Ikea and you buy a piece of furniture and you bring the pieces back and the set of instructions, you put them all on the floor. If you start at three, you might get the table to fit together, but you step back and it looks a little uneven, and you maybe open a drawer and it falls apart. What I'm saying is clause 34 reads like a series of instructions. Instruction number one is it shall be governed by and construed in accordance with Title IX, i.e., the FAA. Second instruction, shall be referred to three persons at New York's excise. Texas is inserted in lieu of that. One to be appointed by each of the parties here to the third by the two so chosen. So that spells out how you appoint your panel. Moving on down to Section 3, what happens once you get the panel? Once you get the panel, the proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators. So matters such as when your pre-hearing statement is due, how to subpoena a witness, when your exhibits must be exchanged, when you identify your witnesses, those kinds of matters are governed by the rules of the Society of Maritime Arbitrators. The proceedings, once the panel is impaneled, the proceedings proceed in accordance with the SMA rules. That's how I would, that's how I read this clause. And no, I do not read this clause to have, this particular phrase shall, shall be conducted in accordance with the rules of the Maritime, Society of Maritime Arbitrators as having no effect at all. I think it provides all of the details for the proceedings once the panel is impaneled. It should have read the rules except for Section 10. It didn't have to read the rules except for Section 10, because Section 10, the Section 10 directly contravenes the plain language in Part 2. In other words, Part 3 of the clause, which is the SMA incorporation, directly contravenes Part 2, which says. No, because it provides a remedy if the parties don't do what they're supposed to. I mean, if the parties, if you had designated somebody in response to the first email, we wouldn't be here, okay? That would have been the end of it. But if that falls apart, then what do we do? Well, that's where they're arguing Section 10 comes in. And my response to that is no, that is dealt with by the incorporation of Section Title 9. Title 9 provides that remedy. You don't have to go all the way down to the rules that govern the proceedings, because the way it's drafted, it looks like that incorporation is to provide the procedures for the proceedings once the panel is there. And if there's a lapse before the panel gets there, then the remedy is right here in Title 9. I would posit, Your Honors, that the ExxonMobil, the BP Exploration v. ExxonMobil case that we cited, and I see my time's running out, so I will raise that on rebuttal. You have time on your vote. Thank you. Thank you, ma'am. Mr. Jenkins. Good morning. May it please the Court. I think this case has become a lot more complicated than it should have been. In all due respect, this case involves two charter party agreements. Opposing counsel is very qualified and experienced maritime attorneys. The client, Bordelon, is a large supply boat company. These charter agreements and the terms of these charters are not novel issues to them. It's very common in these VIMCO form charter agreements that there's different dispute resolution provisions, and the parties typically adopt one or the other. They'll do a strikethrough, and there may be some modifications. That's exactly what happened here. They strikethrough an entire dispute resolution provision and used another one in the charter agreements, but then added some of the strikethrough. What about her argument that they meant to adopt Section 5 of the FAA rather than Section 10 of the SMA in the event that they didn't do their designation of the arbitrator? Well, they noted that throughout the brief, that we should have gone to the court, I guess, for some kind of recourse to have the court address the method of choice of the arbitrator. But the fact is this contract provided the method for choosing the arbitrator. Yes, but they're arguing this is a little different than I had understood their argument. I'm not saying they didn't make it. I'm just saying it suddenly hit me. This is the value of oral argument. It suddenly hit me a little differently. They're arguing that here it says this charter shall be governed in accordance with Title IX of the United States Code. Okay. And that is then the framework up until we get to the arbitration. Then when we're in the arbitration, then we have the proceedings conducted under the SMA. And so if we have in this middle rule, as she called it, or step or whatever it was, we have a problem. We revert back to Title IX of the U.S. Code rather than, because we're not yet in the proceeding, we revert to Title IX rather than SMA. What's your answer to that particular, very specific argument? My appreciation of it is that reverting to Title IX, Section 5 on the appointment of the arbitrators, it only applies if the contract otherwise is silent as to the method of appointment. I still believe that the SMA rules govern how we appoint the arbitrator because we have incorporated and adopted them. And those rules specifically provide for the timeframe and what happens if the other party does not appoint its arbitrator within that timeframe. I don't think we get to Section 5 because I think it's covered by the adoption of the SMA rules. You know, your amended notice of removal is still messed up. Okay. I mean, you talk, you've got, and I mean, this is important because we have to have jurisdiction or otherwise we don't really care about Section 10, 5, or anything else. And so in the diversity section, you talk about citizens of the United Kingdom and of the United States, and then you say somebody resides in Texas. And as you know, residence doesn't get you there. It's citizenship for purposes of diversity. So you still haven't proven diversity on the diversity section. And then in the section on the convention, you don't have any of the Freudensprung elements listed and explained. So you talk about them in other areas, but in the actual amended notice of removal, we don't have them laid out. So I'm thinking whoever wrote the amended notice of removal wasn't also the guy writing the brief and wasn't also the guy or gal reading what our letter said. So I don't know if you want to answer that, you want to take another shot at it or what you want to do, but I'm concerned that the amended notice of removal is still insufficient, even though lurking in there might be some federal jurisdiction. Okay. I appreciate the opportunity to address the jurisdiction issue. So the federal court has jurisdiction three different ways here. One is diversity. If these are limited liability companies and the citizenship of the LSC is determined by the citizenship of the members. The citizenship of the members of the Bibi entity are either Texas or in the United Kingdom. It's not in your amended notice of removal. You said reside. And first year civil procedure we're taught. You said citizen of the United States but reside in Texas. Residence doesn't matter. I'm residing in Louisiana right now. I have a hotel room. I'm here for three days. But I don't plan to live here. So I'm not a citizen of Louisiana. Again, a wonderful state, but I'm a citizen of Texas because that's where I plan to go back, even if I spend a month in Florida or Louisiana or Mississippi or wherever. So I want to just clarify what we had indicated in the amended notice of removal with the affidavit was that, again, that there were the point to make was that there were no citizens in the United States in Louisiana. These were citizens of different states. Okay. But that doesn't by residing in Texas, I could go reside in Texas. When I went to law school, I resided in Georgia for three years. I didn't consider myself a citizen of Georgia. I still consider myself a citizen of Florida where I'd grown up because that's where I was going to return. And that's how that's determined. So the fact that at that moment I have an apartment in Georgia and all that, I still put my permanent address as my Florida address. And you know that. You've been a student. So that's kind of Civil Procedure 101, respectfully, that you have to put the citizenship of the state. Okay. I'm not saying it's not fixable. I'm just saying it's not correct. But then also the convention is not fully fleshed out under Paragraph 6. Now, with respect to the convention, so if we remove the United States, the citizenship issue of it for the time being, we still believe that there's federal question jurisdiction under the convention because we're dealing with a commercial instrument here as an admiralty contract and that has the arbitration provision and it envisions at least partial performance in another jurisdiction or another country. Here the Charter Agreement specifically provides that the area of operation is potentially worldwide operation. The Charter Agreement specifically says that. So I don't believe that under the convention you actually get to having to address the citizenship issue if that first requirement is met. And then I believe that there is a You're saying that if the first requirement is met and you're going for jurisdiction under the convention, you don't have to spell out the citizenship of the parties? If your contract envisions performance in a foreign jurisdiction, I'm paraphrasing how it's worded, then you do not have to satisfy the Well, you paraphrase how it's worded throughout and that's where the technicality And it would be very easy to revise your documentation to use the right terms. And I think that's all that Judge Haynes is trying to tell you. And I understand. I respect that. And, again, I'm just looking at actually at Section 202 covering the convention. And, again, based on the wording of this provision, it indicates that it would apply if this is a commercial agreement that contains the arbitration provision and it envisions performance or enforcement abroad. And here this Charter contemplated that the vessel would work in worldwide locations. Where was it going to go abroad? They work in numerous different jurisdictions. I mean, they work in Trinidad. They work in the North Sea. Where is that in here? Oh, in the pleading? In anything. We indicated in the removal that it envisioned work in foreign jurisdictions. Okay, so that's it. That was no more specificity than that. And then the final, potentially third basis for jurisdiction would be maritime law. I understand that an amnesty claim is not a basis to remove, but once the case has been removed and there was no remand of the case, no motion to remand the case, they didn't contest removal, that once there, the Court can have amnesty jurisdiction. You're saying the savings to suitors drops out if it's not used as a basis? I think if they haven't, I believe the savings to suitors, even though they didn't I can appreciate the fact that it still would apply, but if they haven't filed a motion to remand the case, then they've waived that defense. At this point, the Court then has jurisdiction of a case involving two maritime contracts, and that's not disputed. I mean, these were two vessels, one of which, the Sheila Bordelon, they say that, oh, the Sheila dropped out because we settled that part of the case. That's not true. The Sheila has been around forever in this case. Even in the arbitration, they're still raising issues with respect to the Sheila. That's not accurate to say that. And as far as the Brandon Bordelon, now they're conveniently trying to call it hull 103. That's not accurate either. I mean, they filed suit in October of 2015. In June of 2015, the Brandon Bordelon, the one that was supposedly under construction, was floating. It was named. It was a vessel. They were just doing the final stages of the refitting of certain things, adding certain equipment, and quite frankly, that's what actually gives rise to dispute between the parties. But the fact is that we still have maritime jurisdiction. Maybe we couldn't have removed it on that basis, but once it was removed, once it was at the district court level, at that point, at that point, the case, you know, the Court had maritime jurisdiction. I think there's a difference between removal and just subject matter jurisdiction. All right. What about appellate jurisdiction? You have a different view on that. I do. I think that they've appealed this under Section 4, which requires that the demand for arbitration, the Court refused to grant a demand for arbitration, and I don't think that's what we have here. The Court granted arbitration. They're now trying to couch it as though, well, we were trying to get them to enforce arbitration a certain way. No. That's what we saw along. They, the Court granted arbitration. They just don't like the way the Court did it. And that's not one of the enumerated grounds for appealing this. I think this is a premature appeal. I think we are, and it should be noted, we're well into the arbitration process. They've had. With the arbitrator they don't like? With the arbitrator they don't like. The panel has been set, and they're actually down the road now in the arbitration. Let me ask you this, though. Isn't this kind of risky for you if you kind of could win the battle and lose the war if we said, yeah, okay, we don't have appellate jurisdiction, and then after, let's say you win the arbitration and you come back up, now she can challenge the arbitrator. In fact, that's one of the few ways you can challenge an arbitration nowadays is challenging the arbitrator, and they win. Then you've just gone through all of this mess for nothing. Don't you want this? And I'm not saying you should create appellate jurisdiction when there is none. I'm just trying to understand. There seem to be a lot of collateral fights in this case that don't center on the real dispute. There are a lot of collateral fights in this case. But are you concerned about that? It's something to be mindful of, but I believe that it's a risk that the clients and the attorneys handling the arbitration decided to take. I mean, because they feel like the process by which the arbitrators are appointed is clearly set forth in the contract. I mean, we followed the rules. I mean, you mentioned that they were reminded about this notice to appoint their own arbitrator. Look, they got on February 5, they got a FedEx letter demanding arbitration and referencing the SMA rules. They did nothing. They got two additional notices from that saying, look, we've initiated this. You've got to appoint your arbitrator. They did nothing. Nearly six weeks later, we finally get a letter where they appoint their own person. Now they're trying to act as though they didn't know or had we known. That's not true. We could have walked to their office and handed it to them and sat down and visited and said, you need to do this. They wouldn't have done it. This is exactly the way they wanted this to play out, to delay this process. They didn't want to arbitrate. They did not want to. We pushed it. We followed the rules that were agreed to in the contract, and for that reason, you know, we decided to proceed with the arbitration. And granted, they could appeal this. I believe this would be a Section 10 issue. If they appeal this at the end of the day, then that's just a calculated risk the client took. I wonder whether they intentionally refused to appoint someone or really were just confused, didn't get the e-mail, didn't read Section 10, just fumbling along. Well, look, the SMA is not like the Federal Rules of Civil Procedure. I mean, this is not this lengthy book of detailed procedure. The SMA is pretty straightforward. I mean, the ABA probably even has, I mean, AAA probably has more detailed rules than the SMA. It's very straightforward. There are not a lot of them. And they mention in their briefs all these various versions. They didn't know which one to find. They're on the website. It's not a lot of rules. Section 10, one of the earlier rules, clearly sets forth the procedure. And regardless of which version of the SMA rules you're looking at, Section 10 is the same throughout. It never changed. It's not like they said, oh, well, and five years ago they changed it from 10 days to 20 days. No, it never changed. It's been 20 days, clearly set forth in the Apple SMA rules. Those are not detailed. They're not confusing. The SMA is a common dispute resolution provision that is often contained in these charter agreements. I mean, there are several we have going on right now. Probably it's more common than a AAA arbitration in the context of a maritime case. So I don't believe for one second that they were confused about it. I think they just delayed the process intentionally. One other thing I just want to address in conclusion that one of the issues that I think I haven't been able to explain is they discussed this push hard for this application of Texas law. I mean, I think this clearly is a maritime case. We have two charter agreements and two vessels. I mean, I think that's pretty straightforward. But in the event that we were to apply Texas law, it's really sort of form over substance because really I think that Texas law would yield the same result. I mean, we have an incorporation by reference of the rules pertaining to a particular form of arbitration. I think that Texas would still allow that. They reference and spend a lot of detail discussing a Texas case that distinguishes between the preprinted form versus the typewritten terms. And I don't think that applies to what we're dealing with here. So I think whether we have — I think it's clearly maritime law. But in the event that there is an issue with respect to the application of Texas law, I think it yields the same result.  JUSTICE SCALIA. Thank you, sir. Ms. Roddy, you have five minutes on the rebuttal. MS. RODDY. Thank you, Your Honor. Maritime law might adopt Texas law, the surrogate state law, to the extent it was not inconsistent with maritime law. And maritime law might well adopt the McCreary rule out of Texas, which basically says that the typewritten provisions of a contract are a better indication of the intent of the parties and prevail over the form, preprinted form of the contract. I think the same holds true in our arbitration agreement, because we have not only preprinted forms, but we have some additions. And one of the things that was changed from the preprinted form was the deletion of a unilateral default selection process in the event of a lapse of selection. The second thing I would point out, if maritime jurisdiction applies, then I think there is appellate jurisdiction over the appeal. But the argument that there are two charter parties at issue is absolutely wrong. There is one... JUSTICE SOTOMAYOR. Has anybody made that argument before? MS. Yes. But, yes, if it was maritime, then maritime jurisdiction would exist over the appeal. But the charter party over the Sheila Borlawn is not in question in this case. The only thing in dispute is one arbitration clause in one contract, this contract, and it involved a vessel that was under construction at the time the contract was signed and was under construction at the time Bibi, Mr. Jenkins' client, early terminated the contract. It was not launched for some time thereafter. If the SMA rules apply to the procedure to follow in the event of a lapse, then Section 35 of the SMA rules also apply. Section 35 says any demands or notices must be served either by the U.S. mail or personally, does not permit service by e-mail. So all these e-mails, Judge Haynes, that you mentioned had gone to us during the 50-day between the 5th of February when this demand was sent and between the time that we nominated Mr. Price. They don't count under the SMA rules. The SMA rule says you got to serve either personally or by U.S. mail. Secondly, if the SMA rules apply, then Section 10 is very explicit. If you're going to use it as a gotcha, and there's no question that's what's going on here, if you're going to use Section 10 as a gotcha, your notification has to disclose, hey, by the way, you've got 20 days to appoint an arbitrator, and if you don't, we get to appoint one for you. That's plain and black and white in Section 10 of the SMA rules. That was not done. So if you have the SMA rules applying instead of Title IX to deal with the lapse of appointment, then the SMA rules, A, required notices to be served by mail or by personal service, which wasn't done, and B, required that the notice specifically set forth operative language from Section 10, which says you must appoint your arbitrator within 20 days, and if you don't, we can appoint one for you. What if the only jurisdiction is under the convention? What are the requirements then? The requirements for? For appointing an arbitrator. I don't believe the convention that Bibi is citing actually has a separate set of rules other than Sections 4 and 5. I believe it reverts to the substantive procedural rules of the Federal Arbitration Act. So it adopts the FAA for its procedures, such as the appointment of an arbitrator in the event of a lapse. And I mentioned, and I wasn't able to completely address, British Petroleum Exploration v. Exxon Mobil. It's a case from this Court from 2012. It involved a case not dissimilar from this. It's analogous to this, although in this case, there were three parties and each party appointed an arbitrator, so there was no room for the one to be appointed as a neutral. The Court fashioned a remedy, the District Court fashioned a remedy that the judge felt was fair under the circumstances to all three parties and appointed a panel of five with the three parties, the three arbitrators appointed by the three parties to select two neutrals. That seemed fair and workable. This Court said, no, the arbitration agreement is clear. It says you arbitrate before three parties, three arbitrators, and remanded for the District Court to fashion some remedy that complied with the written agreement. And I see my time's up. Thank you, Your Honor. We'll recess for approximately 10 minutes.